

**Your Missouri Courts**

Search for Cases by: Select Search Method...

**Judicial Links** | **eFiling** | **Help** | **Contact Us** | **Print**          GrantedPublicAccess  Logoff CJMACK1974

**2011-CC01197 - JOHN MEYER V HARTFORD LIFE & ACCIDENT INSURANCE CO (E-CASE)**

| Case Header/Attorneys | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**          Sort Date Entries: ● Descending    Display Options:
**Click here to Respond to Selected Documents**                ○ Ascending         All Entries

| | |
|---|---|
| 01/21/2021 ☐ | **Agent Served** |
| | Document ID - 20-SMCC-2343; Served To - HARTFORD LIFE & ACCIDENT INSURANCE COMPANY; Server - COLE COUNTY SHERIFF'S DEPARTMENT; Served Date - 11-JAN-21; Served Time - 08:54:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - SERVED KELLY POINTER, DESIGNEE. |
| 12/31/2020 ☐ | **Judge Assigned** |
| | JUDGE REBECA NAVARRO-MCKELVEY IS ASSIGNED TO THIS CASE AS THE DIVISION ONE JUDGE PER THE ORDER OF JUDGE ASSIGNMENTS AND INDIVIDUALIZED DOCKET PLAN |
| 12/28/2020 ☐ | **Summons Issued-Circuit** |
| | Document ID - 20-SMCC-2343, for HARTFORD LIFE & ACCIDENT INSURANCE COMPANY. SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. KT |
| 12/21/2020 ☐ | **Filing Info Sheet eFiling** |
| | **Filed By:** KARI S PETERSON |
| ☐ | **Pet Filed in Circuit Ct** |
| | Petition. |
| | **On Behalf Of:** JOHN MEYER |
| ☐ | **Judge Assigned** |

Case.net Version 5.14.12                    Return to Top of Page                 Released 11/10/2020

**FILED**



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

JAN 2 1 2021

CIRCUIT CLERK
ST. CHARLES CO.
**RECEIVED**

| Judge or Division:<br>TED HOUSE | Case Number: 2011-CC01197 | |
|---|---|---|
| Plaintiff/Petitioner:<br>JOHN MEYER | Plaintiff's/Petitioner's Attorney/Address<br>KARI S PETERSON<br>1034 S BRENTWOOD BLVD<br>PENTHOUSE 1A 23RD FLOOR<br>ST LOUIS, MO 63117 | JAN 0 8 2021<br>COLE COUNTY<br>SHERIFF'S OFFICE |
| | vs. | |
| Defendant/Respondent:<br> HARTFORD LIFE & ACCIDENT INSURANCE<br>COMPANY | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO 63301 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

## Summons in Civil Case

| The State of Missouri to: HARTFORD LIFE & ACCIDENT INSURANCE COMPANY | |
|---|---|
| **Alias:**<br>DIRECTOR OF DEP OF INSURANCE<br>301 WEST HIGH STREET<br>ROOM 530<br>JEFFERSON CITY, MO 65101<br>*COURT SEAL OF*<br><br>**ST. CHARLES COUNTY** | You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.<br><br>_____12-28-20_____  _____/S/ CHERYL CROWDER_____<br>Date                                    Clerk<br>Further Information: |

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
____Kelly Pointer____ (name) ____Designee____ (title).

☐ other: _____

Served at ___301 W High St. Jefferson City, Mo. 65101___ (address)
in ___Cole___ (County/City of St. Louis), MO, on ___01-11-2021___ (date) at ___8:54 AM___ (time).

Sheriff _____  By ___Deputy _____ #48___
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date                                    Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $___10.00___ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# EXHIBIT A

2011-CC01197

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

JOHN A. MEYER,                          )
                                        )
      Plaintiff,                        )        Cause No:
                                        )
v.                                      )
                                        )        Division No:
HARTFORD LIFE & ACCIDENT                )
INSURANCE COMPANY                       )
                                        )
Serve: Director of Department of Insurance )
      301 West High Street, Room 530     )
      Jefferson City, MO 65101           )
                                        )
      Defendant.                         )

## PETITION

COMES NOW Plaintiff, John Meyer, and for his cause of action against Defendant,

Hartford Life and Accident Insurance Company, states as follows:

### PARTIES

1.      Plaintiff John Meyer ("Meyer") is a resident and citizen of the State of Missouri.

2.      Hartford Life and Accident Insurance Company ("The Hartford") is an insurance

company with its principle place of business in Hartford, Connecticut.

3.      The Hartford is authorized to conduct business in the State of Missouri.

4.      Valid service of process may be obtained over The Hartford by serving the Missouri

Department of Insurance or through service at the above address.

### JURISDICTION

5.      The Hartford conducts a substantial amount of insurance business in Missouri.

6.      This Court has jurisdiction over this matter pursuant to Mo. Rev. Stat. 104.1075.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

7.      This Court also has jurisdiction over this matter pursuant to Article 5 §14(a) of the Missouri Constitution and Mo. Rev. Stat. §478.070.

8.      The amount in controversy exceeds $25,000.00.

<div align="center">**VENUE**</div>

9.      Meyer is a resident of the State of Missouri. He was an employee of the O'Fallon Fire Protection District and in the course of his employment became a covered person in a Long Term Disability Insurance Policy issued by Defendant Hartford Life and Accident Insurance Company.

10.     Pursuant to Mo. Rev. Stat. §104.1075, venue is proper in this Court.

11.     Pursuant to Mo. Rev. Stat. §508.010, venue is proper in this Court.

<div align="center">**STATEMENTS OF FACT**</div>

12.     O'Fallon Fire Protection District employed John Meyer as a firefighter.

13.     O'Fallon Fire Protection District sponsored a group welfare benefits plan for its participating employees ("Plan").

14.     The Plan offered long-term disability ("LTD") benefits to covered and eligible O'Fallon Fire Protection District employee Plan participants.

15.     The Hartford administered LTD benefit claim determinations.

16.     The Hartford's group insurance policy ("Policy") funded LTD benefits.

17.     Under the terms of the Plan and the Policy, Meyer is a Plan participant and covered employee.

18.     The Policy articulates the criteria by which an employee claimant may be eligible for LTD benefits.

<div align="center">EXHIBIT A</div>

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

19.     The Policy's definition of disability is divided into a two year "Your Occupation" and thereafter into an "Any Occupation";

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
1) Your Occupation during the Elimination Period;
2) Your Occupation, for the 2 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first.

For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:
1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

20.     The Policy pays up to 66 2/3% of an employee's pre-disability earnings, less applicable offsets.

21.     Meyer's last day of work as a firefighter at O'Fallon Fire Protection District was on July 10, 2017. Meyer then required emergency hospitalization and medical treatment.

22.     Meyer became disabled due to the effects and limitations of: disseminated histoplasmosis; severe drug-induced acute liver injury from Itraconazole, the medication required to treat the disseminated histoplasmosis; severe liver injury with resultant portal hypertension and ascites; fatigue; confusion; hepatic encephalopathy; bilateral pleural effusions; aortic stenosis; nausea; forgetfulness; cirrhotic changes in liver; granulomatous liver disease; dyspnea; right upper lobe pulmonary nodule; shortness of breath with exertion; restrictive ventilatory defect;

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

hepatopulmonary syndrome; benign paroxysmal positional vertigo; cholestatic hepatitis; hepatic outflow obstruction.

23.     Meyer timely and proper submitted to The Hartford a claim for LTD benefits.

24.     On October 19, 2017, following the Policy's mandatory waiting period, The Hartford approved Meyer's claim.

25.     On October 2, 2017 Dr. Andrej Spec, M.D., treating infectious disease specialist, completed an Attending Physician's Statement at The Hartford's request, stating Meyer could not work for at least six months.

26.     The Hartford requested additional documents from Meyer, including, but not limited to, requests made in correspondence dated April 12, 2018, May 9, 2018 and June 4, 2018. In these letters, The Hartford told Meyer that if they did not receive a Reimbursement Agreement for Workers' Compensation Benefits, (which Meyer was not receiving), The Hartford would estimate a workers' compensation benefit which may be payable, which may greatly impact Meyer's monthly LTD payments.

27.     On October 2, 2018 Dr. Andrej Spec, M.D., treating infectious disease specialist, completed an Attending Physicians Statement and Progress Report at The Hartford's request, stating that Meyer's expected to return to work was unknown and that "patient has a severe, life threatening and debilitating infection. received IV infusions for 3+ hours daily, which led to many complications including vomiting and weakness. He is unable to sit/stand for more than 1 hr @ a time." Dr. Spec also stated that Meyer continues to have fatigue and dizziness with postural changes plus increased forgetfulness.

28.     On October 31, 2018 counsel for Meyer sent The Hartford a letter asking for documentation that the Plan is an ERISA plan.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

29.    On November 6, 2018 The Hartford wrote counsel for Meyer and stated that the Policy is not an ERISA policy.

30.    On November 7, 2018 counsel for Meyer sent correspondence to The Hartford citing Missouri law that precludes The Hartford's attempt at subrogation on Meyer's workers' compensation claim.

31.    On November 6, 2019 Dr. Spec completed an Attending Physician Statement and Progress Note at The Hartford's request. He noted surgery had been performed since his last report and that the patient had been hospitalized. Dr. Spec stated that the expected return to work date for Meyer was unknown and that the patient had a severe, life threatening infection which led to many complications including vomiting, weakness and he is unable to sit/stand for long periods. Dr. Spec also stated that Meyer continued to have fatigue and dizziness, nausea, vomiting and forgetfulness.

32.    On November 27, 2019 The Hartford asked Dr. Spec for additional information regarding Meyer's abilities. Dr. Spec provided responses on or about December 2, 2019, stating the following:

**1. Do you agree, based on your exam findings that Mr. Meyer would be able to perform sedentary work (according to the DOL definition) as noted below? Yes____ No X If No, please indicate reasoning below.**
He has profound fatigue that makes on work day something he cannot hndl.

**Sedentary (Lifting occasionally up to 10 lbs., frequently a negligible amount. Requires mainly sitting, walking/standing for brief periods and frequent handling, fingering, and extending arms at desk level.)**

**2. If no, please provide the following information so that we can make a determination for Mr. Meyer**

Patient is able to sit for '1__ hours at a time for a total of 2-3 hours/day.
Patient is able to stand for 0.25 hours at a time for a total of 1 hours/day.
Patient is able to walk for 0.25 hours at a time for a total of 1 hours/day.
Patient is able to lift up to 5 pounds frequently and up to 10 pounds occasionally while standing/walking.
Patient is able to lift up to 5 pounds frequently and up to 15 pounds occasionally while sitting.
Patient is able to finger, handle, grip, and grasp ___ frequently or X occasionally.
Patient is able to reach at desk level: ____ frequently or X occasionally.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM



33.    On or about January 5, 2020 Dr. Christopher Lynch, Meyer's primary care physician, filled out a report and answered questions about Meyer at The Hartford's request, stating that the consultant notes were reviewed in detail and that he agreed with ID and hepatology recs and Meyer was "unable to return to work pending F/U and further correspondence." Dr. Lynch stated he agreed with Dr. Spec's determination that Meyer is not capable of returning to work in any capacity and that Meyer was too weak based on last clinical assessment. Dr. Lynch also stated that Meyer had mood disturbances secondary to histo and complicated protracted illness and deconditioning.

34.    On or about January 7, 2020 The Hartford's claims notes state "provider response from Dr. Spec indicates that this AP is in full agreement with the peer review on file and is advised that the EE should not have any workplace restrictions."

35.    On or about January 10, 2020 The Hartford terminated Meyer's claim.

36.    At the time of The Hartford's decision, Meyer was receiving treatment from Dr. Spec, Infectious Disease Specialist; Dr. Christopher Lynch, Primary Care; Dr. Adrian Shifren, Pulmonologist; Dr. Elizabeth Blaney, Gastroenterologist; Dr. Jacqueline Freckenstein, Gastroenterology, Transplant Hepatology and Dr. Arun Varadhachary, Neurology.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

37.     In its denial letter, The Hartford stated that they were utilizing a 'Medical Consultant Review' by Dr. Luicen J. Parrillo, that The Hartford had commissioned, which stated that Meyer did not have any degree of physical impairment that would translate into medically necessary restrictions and/or limitations.

38.     In its denial letter, The Hartford stated that a Vocational Rehabilitation Clinical Case Manager used the information provided by The Hartford's 'Medical Consultant Review' to perform an Employability Analysis which showed there were a number of occupations for which Meyer was qualified within his physical capabilities, and listed the salaries for the same:

| Occupation: | National Median Monthly Wage: |
|---|---|
| Deputy Sheriff, Grand Jury | $5,449.60 |
| Deputy Sheriff, Building Guard | $5,449.60 |
| Protective Officer | $5,449.60 |
| Fire Extinguisher-Sprinkler Inspector | $5,345.60 |
| Tractor-Crane Operator | $4,846.40 |
| Monorail Crane Operator | $4,846.40 |

39.     The Hartford compensated Dr. Parrillo for his review of Meyer's claim.

40.     Dr. Parrillo did not personally meet, examine or interview Meyer.

41.     The General Provisions of the Policy states that The Hartford is entitled to Additional Proof of Loss in determining if a participant is disabled, and defines the same as:

**Additional Proof of Loss:**  *What additional proof of loss is the Company entitled to?*
To assist Us in determining if You are Disabled, or to determine if You meet any other term or condition of The Policy, We have the right to require You to:
   1)  meet and interview with our representative; and
   2)  be examined by a Physician, vocational expert, functional expert, or other medical or vocational professional of Our choice.
Any such interview, meeting or examination will be:
   1)  at Our expense; and
   2)  as reasonably required by Us.
Your Additional Proof of Loss must be satisfactory to Us.  Unless We determine You have a valid reason for refusal, We may deny, suspend or terminate Your benefits if You refuse to be examined or meet to be interviewed by Our representative.

42.     The Policy defines "Physician" as:



# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

**Physician** means a person who is:
1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;

2) licensed to practice in the jurisdiction where care is being given;
3) practicing within the scope of that license; and
4) not Related to You by blood or marriage.

43.  Dr. Parrillo is not an Infectious Disease Specialist, Pulmonologist, Gastroenterologist, Transplant Hepatologist, nor is he a Neurologist.

44.  Dr. Parrillo is not licensed to practice medicine in Missouri.

45.  On January 28, 2020 Meyer requested his claim file from The Hartford and appealed The Hartford's decision to terminate benefits, and in support of the same, stated that The Hartford had not complied with the terms of its own Policy as they did not ask him to meet or interview with their representative, did not have him examined by a Physician, Vocational Expert, Functional Expert or other medical other vocational professional, and the Physician whom The Hartford hired to provide its report was not licensed to practice medicine in Missouri, nor was he an infectious disease specialist.

46.  On January 28, 2020 Meyer sent The Hartford his January 13, 2020 medical record from Dr. Andrej Spec, M.D., treating infectious disease specialist, which stated that "Patient is now presenting with worsening fatigue and shortness of breath off therapy along with nausea and vertigo." Dr. Spec stated that Meyer is exceedingly debilitated by his symptoms and is unable to perform activities necessary for his normal daily routine, let alone work duties as a firefighter.

47.  On or about January 31, 2020 The Hartford acknowledged Meyer's request for an appeal and request for his claims file.

48.  On or about February 3, 2020 The Hartford sent Meyer his claims file with redactions.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

49.     In March of 2020 Meyer sent correspondence to The Hartford asking why the file they sent to him was redacted. Meyer also pointed out that the summary of his medical treatment that The Hartford's reviewer gave was inaccurate. Meyer pointed out that he was admitted to Barnes Jewish Hospital on or about October 2, 2017 following a diagnosis of Stage II liver failure and noted that Dr. Spec had not stated that Meyer was able to return to work on October 2, 2017.

50.     In Meyer's letter to The Hartford he asked why numerous treatment records were not considered or reviewed, including those from his pulmonologist, Dr. Shifren, who was treating him for decreased lung function and pulmonary nodules and Dr. Elizabeth Blaney, his gastroenterologist treating his esophageal variances due to his liver failure.

51.     Meyer provided The Hartford with a March 3, 2020 letter from Dr. Andrej Spec, M.D., Infectious Disease Specialist. Dr. Spec explained that he was the medical director of the invasive fungal infections clinic at Washington University St. Louis School of Medicine and is also a co-author in the upcoming guidelines on Histoplasmosis and Endemic Mycosis. Dr. Spec stated that he had never been contacted by The Hartford's peer reviewer. Dr. Spec stated that he did not agree that Meyer was able to return to work with no restrictions, and explained that his opinion was based upon several things. Dr. Spec explained that as a result of his severe infection Mr. Meyer is profoundly deconditioned, has been left with diminished lung function, wasted muscle mass and impaired pulmonary function, which is not an uncommon complication of histoplasmosis. Dr. Spec stated that as a result of this infection, Mr. Meyer is left severely fatigued and deconditioned, and the subsequent drug induced liver injury has made the situation even worse. Dr. Spec stated that Meyer has been left significantly disabled. Dr. Spec stated that Mr. Meyer has significant liver damage and portal hypertension which is a direct result of the treatment of his histoplasmosis (Itraconazole), and that the same is a rare, but well-documented side effect

EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

of the medication, and this diagnosis has been confirmed by multiple hepatologists as well as a liver biopsy. Dr. Spec explained that this led Meyer to be further deconditioned and to have significant difficulties with fatigue and ability to work. Dr. Spec stated that Meyer was highly deconditioned and in a state where he is unable to manage the physical job of a firefighter and furthermore, due to the extreme fatigue would not be able to function in an office setting.

52.     Meyer sent The Hartford more of his medical records in March of 2020.

53.     On or about March 16, 2020, a Peer Review Coordinator from Exam Coordinators Network, a division of Genex Services, emailed The Hartford thanking them for the referral and provided The Hartford an update on the requested Infectious Disease Peer Review, stating that they were continuing to reach out to "our available Infectious Disease doctors and have had some declines."

54.     On or about April 6, 2020, the Exam Coordinators Network, a division of Genex Services, emailed The Hartford that the Peer Review and Invoice for Meyer had been faxed to the office and were available for The Hartford's review via the web portal.

55.     On or about April 7, 2020, The Hartford emailed Genex Services asking that Dr. Spec's March 3, 2020 letter be specifically addressed. The Hartford representative asked if a review from a liver specialist and/or pulmonologist would be appropriate when reviewing the March 3, 2020 letter as it specifically comments on the histoplasmosis as well as significant liver damage.

56.     On April 6, 2020, Dr. John Brusch submitted a 'peer review' stating that the claimant has no restrictions and limitations of functioning and from January 7, 2020 onward can work 40 hours per week. Dr. Brusch opined that Meyer has a variety of symptoms, many identical to what he had with active histoplasmosis infection, however, during the active infection Meyer

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

had objective findings of sustained fever and weight loss and that neither of those two important findings are currently present. Dr. Brusch also opined there was no evident organ damage that would sustain any restrictions or limitations.

57.     Dr. Brusch was asked to comment on Dr. Spec's March 3, 2020 letter, specifically Meyer's diminished lung function, wasted muscle mass, impaired pulmonary function and explain his difference of opinion regarding Meyer's ability to reliably and consistently work full time without any restrictions. On April 9, 2020, Dr. Brusch provided a report wherein he stated that the degree of liver damage should have no effect on his functioning, that the claimant was not deconditioned as the examinations did not comment on any muscle wasting, that the deconditioning is mostly likely due to disuse atrophy and weakness because he is not doing much, that there was no credible evidence that his fatigue is interfering with his functioning, and that his walking test did not document any hypoxemia after walking. Dr. Brusch then opined that he does seems to have a mentality problem that may well be secondary to obesity and deconditioning.

58.     Dr. John Brusch never examined, interviewed or saw Meyer.

59.      Dr. John Brusch is not licensed to practice medicine in Missouri.

60.     On April 17, 2020 Denny & Associates, Inc. sent an email to The Hartford, stating that they did not believe, based on Dr. Spec's notes alone that the claim was not approved and that Meyer had several ailing conditions caused by the disease.

60.      On April 20, 2020, Denny & Associates, Inc. emailed The Hartford and pointed out that there are other specialists that are treating Mr. Meyer for serious conditions related to this disability that were never contacted. They stated that "The information provided by just this one specialist, Dr. Spec, should be more than enough to close this review, but when you look at his condition as a whole, at the pulmonologist and the gastroenterologist, this is a no brainer! Donna

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

and I have sat in meetings with Mr. Meyer and the chief and assistant chief of the O'Fallon Fire Protection District. We can take one look at him and know that he is unable to work. He is the posterchild for the need of Long-Term Disability insurance. During my 25+ year career as an insurance broker, I have had to explain to individuals why claims had been denied. I understood the reasons and they made sense. THIS make absolutely no sense. Can you please help me understand what is going on here? I need to understand so I can explain this to the administration and the board. They are wanting a status on this. They pay a decent premium for these benefits with the assumption that they are going to be there if and when an employee needs it."

61.     On April 21, 2020, Dr. Spec commented on Dr. Brusch's report at The Hartford's request, stating that Dr. Brusch had never left any messages for him or his staff; that histoplasmosis, like other endemic mycoses, when left untreated for long periods, causes muscle wasting and deconditioning; that profound fatigue is an exceedingly common symptom and takes a year to reverse if it ever does. This may not be very evident in Massachusetts or much of the east coast, where there is little of this disease. Dr. Spec stated that since the cirrhosis is related to the drug-induced liver injury, and not from histoplasmosis directly, there would be no expected progression, just like there would be no expected progression for the histoplasmosis while on therapy. He stated that the same was clearly sequela of both the histoplasmosis and the DIOI, and as such are chronic and not progressing, but also not improving. Dr. Spec stated that furthermore, PTSD cannot be diagnosed by record review, or even 1-2 visits, as it requires a dedicated process, but that even if PTSD was the diagnosis, it would still be PTSD due to his critical illness from histoplasmosis, and therefore, still caused by his infection. Dr. Spec also stated that the objective evidence that existed to support restrictions or limitations was as described above, profound deconditioning and inability to function in his daily life.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

62.     The Hartford then sent Dr. Spec's April 21, 2020 comments to Dr. Brusch in Cambridge, Massachusetts and asked him to provide an Addendum, which he gave on June 3, 2020, wherein he stated that from the prospective of any infectious disease there is not a change to his assessment and from an infectious disease point of view, Meyer does not have any specific occupational restrictions. Dr. Brusch stated that certainly, any overwhelming infection such as histoplasma, especially when left untreated for long periods, leads to muscle wasting and deconditioning, however, as best he could tell, this is not the case with Mr. Meyer.

63.     Dr. Brusch was also asked about cirrhosis and PTSD and stated that he was limiting his comments to infectious issues.

64.     The Hartford compensated Dr. Brusch for his reviews of Meyer's claim.

65.     On or about June 4, 2020 The Hartford sent Meyer a letter denying his appeal.

66.     In its denial letter, The Hartford cited the medical review by Dr. Lucien Parrillo, obtained through Exam Coordinators Network.

67.     In its final denial letter, The Hartford cited with the review of Dr. Brusch, obtained through Exam Coordinator's Network, and his opinion that Meyer had good muscle strength, no evidence of any advancement of liver disease and though he had mild ventilation problems, Dr. Brusch opined the same were due to obesity, such that Meyer did not have any medically supported specific occupational restrictions or limitations.

68.     The Hartford obtained medical consultant opinions from Exam Coordinator's Network, a division of Genex Services, third-party vendors. Exam Coordinator's Network, a division of Genex Services, provides disability medical evaluations that give payers access to specialized peer-to-peer, second and third opinion and independent medical exams for disability

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

claims to help reduce claim costs, improve processing efficiency and comply with regulatory and jurisdictional mandates.[1]

69.    Prior to issuing its final denial, The Hartford did not comply with Meyer's request for compliance with the general provisions of their Policy in its medical examination and peer review.

70.    Meyer has been and remains disabled as defined by the Policy.

71.    Meyer has exhausted administrative remedies.

## COUNT I – BREACH OF CONTRACT

72.    Meyer realleges paragraphs 1-71 as if fully set forth herein.

73.    Meyer is a Plan participant and beneficiary under the terms of the Policies.

74.    Meyer has satisfied the Policies' requirements, including all conditions precedent.

75.    Meyer presented to The Hartford sufficient evidence that he was and remains incapable of performing both his own occupation and any occupation for which he is qualified by education, training or experience.

76.    Meyer is entitled to unpaid and accrued benefits, as The Hartford breached its insurance contract in:

(a)    Issuing a decision denying Meyer's claim, despite the evidence demonstrating that he was entitled to benefits under the Policies;

(b)    mischaracterizing Meyer's medical impairments and limitations;

(c)    failing to properly assess and weigh medical records and opinions-including affording undue weight to its medical and vocational experts;

(d)    failing to adequately apply the Policies applicable provisions, including each component of the term disability;

(e)    failing to adequately apply the Policy's applicable provisions, including each component of the term "Physician";

---

[1] Genexservices.com/disability/ecn-medical-evaluations.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09.41 AM

(f)     failing to have Meyer personally examined by a Physician, despite the Policies authorizing such an examination;

(g)     failing to have Meyer meet and interview with their representative; despite the Policies authorizing such an examination;

(h)     failing to successfully contact Meyer's physicians for the purposes of effectuating a complete review; and/or

(i)     failing to inform Meyer of the particular evidence it required for him to satisfy its interpretation of the Policies.

77.     The Hartford's failure to pay Meyer's benefits constitutes a material breach of the Policies.

78.     Meyer is entitled to damages in the form of disability benefits to be paid beginning January 10, 2020.

79.     Meyer remains eligible for benefits.

WHEREFORE, Meyer seeks relief from The Hartford for unpaid past due benefits and for attorney's fees and costs associated with this action.

## COUNT II -  BREACH OF FIDUCIARY DUTY

80.     Meyer realleges paragraphs 1-79 as if fully set forth herein.

81.     Meyer participated in and benefited from the Plan as previously indicated.

82.     The Hartford, the Plan's claims administrator, owes a fiduciary duty to the O'Fallon Fire Protection District Plan participants and beneficiaries.

83.     The Hartford's Policy explicitly afforded it discretionary authority rendering it a fiduciary:

**Policy Interpretation:**  *Who interprets the terms and conditions of The Policy?*
*We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy.*

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

84.     The Hartford's fiduciary duty also arises from other Plan and Policy provisions conferring upon The Hartford discretionary authority and a special relationship in exercising the administration of benefits determinations for Plan participants.

85.     The Hartford's fiduciary duty further arose from the facts surrounding its administration of the Policy. Those include a relative inequality of knowledge, authority and bargaining power.

86.     Although the Employee Retirement Income Security Act ("ERISA") does not govern this claim, The Hartford's analysts, specialists, consultants and representatives concurrently administered both ERISA and non-ERISA disability claims. As such, they had, or should have had, knowledge and awareness of the importance of proper claims handling.

87.     The Plan and Policy provisions and The Hartford's conduct rendered it an actual, *de facto* and implied fiduciary relative to Meyer.

88.     The fiduciary duty required The Hartford to communicate, act loyally, disclose information, avoid misrepresentations and behave as a competent fiduciary.

89.     The Hartford breached that fiduciary duty in:

(a)     Failing to fashion or follow processes to receive and review documents (electronic and otherwise) that it receives from claimants;

(b)     foregoing its Policy provision to arrange for Meyer to attend an independent examination or interview;

(c)     disregarding its own Policy guidelines;

(d)     using Exam Coordinator's Network as a third-party vendor. Exam Coordinator Network's financial conflict of interest is inconsistent with The Hartford's obligations as a fiduciary;

(e)     using ExamWorks as a third-party vendor. ExamWorks financial conflict of interest is inconsistent with The Hartford's obligations as a fiduciary;

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

(f)    failing to comply with Meyer's specific requests for an examination by a physician practicing in Missouri;

(g)    failing to adequately apply the Policy's applicable provisions, including each component of the Additional Proof of Loss Provisions;

(h)    failing to adequately apply the Policy's applicable provisions, including each component of the term "Physician";

(i)    failing to adopt and observe procedures required to mitigate its inherent conflict of interest as both the payor of benefits and the entity responsible for claims decisions;

(j)    contracting with third-party vendors for physician consultants, whose financial conflict of interest is inconsistent with The Hartford's obligation as a fiduciary;

(k)    failing to provide its internal claims manuals, protocols, training materials and/or guidelines to Meyer;

(l)    failing to comply with its internal claims handling procedures and guidelines;

(m)    failing to train and supervise its employees such that claimants will receive timely and complete information and documents; and/or

(0)    failing to compensate and use its medical and vocational consults for the exclusive purpose of providing benefits to Plan participants.

90.    As the payor of benefits and entity responsible for benefits determinations, The Hartford operates under an inherent structural conflict of interest. This conflict negatively affected its duties of loyalty and fidelity.

91.    The Hartford denied Meyer's claim for the purpose of elevating its financial interest. The Hartford transacted business as to benefit itself, rather than Meyer, a beneficiary to whom it owed fiduciary duties. In doing so, it breached its fiduciary duties.

92.    The Hartford's decision to deny Meyer's benefits and its conduct in administering claims are a part of a larger systematic breach of fiduciary obligation.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

93.    The Hartford failed to discharge its duties solely in the interest of its participants and beneficiaries. It acted with both a conflict of interest and breached fiduciary duty to both Meyer and the Plan's participants and beneficiaries generally.

94.    As a result of The Hartford's breaches of fiduciary duty, Meyer has suffered harm that may be remedied through equitable relief.

WHEREFORE Meyer prays for an injunction preventing further unlawful acts by The Hartford in its fiduciary capacity; an equitable accounting of benefits that The Hartford has withheld; disgorgement of profits enjoyed by The Hartford in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an equitable order removing The Hartford as administrator of Meyer's claim; for an equitable order preventing The Hartford from contracting with Exam Coordinator Network; for an award of pre-judgment interest; for an award of attorney's fees; and for further equitable relief as this Court deems just.

## COUNT III – VEXATIOUS REFUSAL TO PAY

95.    Plaintiff incorporates by reference the allegations of paragraphs 1-94 as if fully set forth herein.

96.    The totality of The Hartford's actions evidences not only a breach of contract and fiduciary duty, but also a vexatious refusal and delay to pay Meyer's claim that is unreasonable, vexatious and without reasonable cause and therefore, pursuant to §375.296 R.S.Mo. and §375.420 R.S.Mo. Plaintiff is entitled to damages for vexatious refusal to pay in the amount of twenty percent (20%) of the first fifteen hundred dollars ($1,500.00) and ten percent (10%) of the amount payable in excess of fifteen hundred dollars ($1,500.00), plus a reasonable attorney's fee for vexatious delay and refusal to pay. To date, Meyer has incurred attorney's fees and costs, and will continue to incur such fees and costs until this action is concluded.

# EXHIBIT A

Electronically Filed - St Charles Circuit Div - December 21, 2020 - 09:41 AM

WHEREFORE Plaintiff John Meyer prays for judgment against Defendant The Hartford for a sum in excess of $25,000.00, together with pre-judgment interest and interest at the legal rate, statutory penalties for vexatious delay and refusal to pay, attorney's fees, costs of this action, costs and interest as allowed by law and for such other and further relief as this Court deems just and proper.

**TRIAL**

97.     Meyer requests a jury trial on all triable counts.


Respectfully submitted,


**O'LEARY, SHELTON, CORRIGAN, PETERSON, DALTON & QUILLIN, LLC**


By      */s/ Kari S. Peterson*_____
Kari S. Peterson          49904MO
1034 South Brentwood Boulevard
Penthouse 1-A, 23rd Floor
St. Louis, MO 63117
314-405-9000 telephone
314-405-9999 facsimile
peterson@osclaw.com
*Attorneys for Plaintiff*


# EXHIBIT A



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>TED HOUSE | Case Number:  2011-CC01197 |
|---|---|
| Plaintiff/Petitioner:<br>JOHN MEYER<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>KARI S PETERSON<br>1034 S BRENTWOOD BLVD<br>PENTHOUSE 1A 23RD FLOOR<br>ST LOUIS, MO  63117 |
| Defendant/Respondent:<br> HARTFORD LIFE & ACCIDENT INSURANCE<br>COMPANY | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:   HARTFORD LIFE & ACCIDENT INSURANCE COMPANY**
<div align="center"><b>Alias:</b></div>

**DIRECTOR OF DEP OF INSURANCE**
**301 WEST HIGH STREET**
**ROOM 530**
**JEFFERSON CITY, MO  65101**
*COURT SEAL OF*

*ST. CHARLES COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

<table>
<tr><td>12-28-20<br>Date</td><td>/S/ CHERYL CROWDER<br>Clerk</td></tr>
</table>

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server
**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____        _____
<div align="center">Date                                     Notary Public</div>

**Sheriff's Fees, if applicable**
Summons              $_____
Non Est              $_____
Sheriff's Deputy Salary
Supplemental Surcharge  $_____10.00_____
Mileage              $_____ (_____ miles @ $._____ per mile)
**Total**            $_____

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# EXHIBIT A